UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| JOHN LARRY DANIELS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 5:15-CV-156-JMH |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| JOHNNY BATES, CORR. SGT., *et* | ) | **AND ORDER** |
| *al.*, | ) | |
| | ) | |
| Defendants. | | |

****    ****    ****    ****

John L. Daniels is in custody of the Kentucky Department of Corrections ("KDOC") and is presently confined in the Northpoint Training Center ("NTC") in Burgin, Kentucky. Proceeding *pro se*, Daniels has filed a complaint, pursuant to 42 U.S.C. § 1983 and amended by virtue of his Motion Requesting Leave with Permission to Amend [DE 5], alleging constitutional violations in respect to a disciplinary charge and conviction he received while he was confined at Blackburn Correctional Complex ("BCC") located in Lexington, Kentucky. Daniels has named as defendants Johnny Bates, Sargent, BCC, in his individual capacity; Duncan Kendall, individually and in his official capacity as Chairman of the Adjustment Committee, BCC; and Steve Haney, individually and in

1

his official capacity as Warden, BCC.  [R. 1].  Daniels seeks compensatory and punitive damages.

The Court must conduct a preliminary review of Daniels' complaint because he has been granted permission to proceed *in forma pauperis* and because he asserts claims against government officials.  28 U.S.C. §§ 1915(e)(2), 1915A.  A district court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997).  The Court evaluates Daniels' complaint under a more lenient standard because he is not represented by an attorney.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003).  At this stage, the Court accepts his factual allegations as true and liberally construes his legal claims in his favor.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

## FACTUAL BACKGROUND

On April 1, 2015, during a conversation Daniels had with BCC Sargent Johnny Bates, Daniels made statements leading Bates to conclude that Daniels, formerly a grievance aide at BCC, was indebted to other inmates in his prison dorm

2

regarding grievances he had filed on their behalf or not filed on their behalf, depending on whether Daniels thought a grievance was meritorious. Based on this conclusion reached by Bates, he issued a disciplinary report against Daniels for being indebted to other inmates. [R. 1-5, p. 5]. Following the investigation of this disciplinary report, Daniels was charged with "5-04-Loan sharking, collecting or incurring debts," a major offense. *Id.* Daniels pled not guilty to the offense, requested to be heard by a Hearing Officer, waived the 24-hour notice, and waived an Adjustment Committee hearing. *Id.*

Inmate Legal Aide Michael Whitehead was assigned to assist Daniels. He and Daniels appeared before a Hearing Officer, Duncan J. Kendall, Chairman, Adjustment Committee, on this offense; the hearing was held on April 1, 2015, at 1:10:30 p.m. [R. 1-5, pp. 7-8]. Hearing Officer Kendall considered the investigation report of Sgt. Daniels and that Sgt. Daniels confirmed the report as true and accurate during the investigation. [R. 1-5, p. 7]. At the conclusion of the hearing, Officer Kendall found Daniels guilty of the charged

offense, loan sharking, collecting or incurring debts.   He explained the basis for his findings, as follows:

> During the hearing, Inmate Daniels stated that he wrote the statement, but stated that it was taken out of context, and denied owing money to other inmates, and stated that other inmates, and stated that other inmates felt that he owed them because he would not file their grievances on non-grievable incidents. Inmate Daniels stated that the report misrepresents what he was trying to say.
>
> Due to the report from Sgt. Bates that he confirmed as true and accurate during the investigation, and the submitted written occurrence report from inmate Daniels admitting that he is in debt to several inmates, I do find inmate guilty of the category 5-04.

[R. 1-5, p. 7].

Daniels was sanctioned with the loss of 90 days Good Time Credit on his sentence.  [R. 1-5, p. 8].  Daniels appealed this disciplinary conviction to BCC Warden, Steve Haney.  On May 8, 2015, Warden Haney voided the incident and dismissed the conviction.  *Id.*  Thus, Daniels has been made whole by the dismissal of this conviction and the restoration of the forfeited 90 days of Good Time credit.

## DISCUSSION

To state a claim under § 1983, the plaintiff must allege and show: (1) that he was deprived of a right secured by the

4

Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) (overruled in part by *Daniels v. Williams*, 474 U.S. 327, 330 (1986)); *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-56 (1978); *Black v. Barberton Citizens Hosp.*, 134 F.3d 1265, 1267 (6th Cir.1998). Both parts of this two-part test must be satisfied to support a claim under § 1983. *See Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir.1991).

Daniels claims that Sgt. Bates retaliated against him for filing of grievances on behalf of other inmates, an activity Daniels asserts is protected by the First Amendment. Daniels also claims that the defendants retaliated against him, in violation of the First Amendment, by transferring him to another institution. Liberally construing his complaint, it appears that plaintiff's claims are confined to claims arising solely under federal law and that plaintiff's complaint contains no state law claims.

**A.  Claims Against Defendants in their Official Capacities**

Daniels has sued defendant Duncan Kendall and Steve Haney, both individually and in their respective official capacities as government officials. If the plaintiff seeks only monetary

relief, the defendants are not subject to suit for money damages in their official capacity because government officials sued for damages in their official capacity are absolutely immune from liability under the Eleventh Amendment to the United States Constitution. *Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 70-71 (1989); *Kentucky v. Graham*, 473 U.S. 159, 169(1985). A state, its agencies, and its officials sued in their official capacities for monetary damages are not considered persons for purposes of § 1983 or a constitutional claim. *Id.; see also Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

Thus, the official-capacity claims for monetary damages against defendants Duncan Kendall and Steve Haney will be dismissed for failure to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

**B.   Claims Against Defendants in their Individual Capacities**

   **1.   Steve Haney, Warden**

Daniels has named Steve Haney, Warden, as a defendant; however, he does not state what actions Steve Haney took or identify any conduct by Steve Haney that violated his constitutional rights other than suggesting that he failed to train his officers not to "issue reprisal[s] or issue [f]alse [r]ep[or]ts". [DE 5 at 3.] The Court is not persuaded that

6

this is a colorable constitutional claim since he does not suggest that Haney directed, instructed, or otherwise permitted his employees to take the actions of which Daniels complains.   Further, when Daniels appealed his disciplinary conviction to Warden Haney, the warden voided the incident and dismissed the charge against Daniels, an action favorable to Daniels.  [R. 1-5, p. 8].  Thus, it appears that Daniels named Steve Haney as a defendant solely due to his supervisory position as Warden at the prison and not for any action or inaction that he undertook with respect to the wrongs of which he complains.

It is well settled that a supervisor is not liable under § 1983 solely because of his being in a supervisory position. In other words, being a supervisor does not automatically entail liability § 1983; personal involvement of that supervisor is required. *See Hays v. Jefferson*, 668 F.2d 869, 872 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982) ("The law is clear that liability of supervisory personnel must be based on more than merely the right to control employees."). A supervisor's liability must be premised upon direct or personal involvement in the conduct complained of. *Leach v.*

*Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989). *See also, Carrie v. Rios*, 08-CV-13-KKC, 2008 WL 320329, at *2 (E.D. Ky. Feb. 4, 2008) (supervisor must "have at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct").

While Daniels named Steve Haney, Warden, in the Complaint, he did not allege that Warden Haney was directly involved in, encouraged, implicitly authorized, approved, knowingly acquiesced in, or in any way orchestrated the alleged unconstitutional conduct of any other prison employees. *Hays, supra*. Therefore, Daniels' complaint against Steve Haney, Warden, will be dismissed because Daniels has failed to state a claim against him for which relief can be granted.

## 2.   Duncan Kendal, Chairman, Adjustment Committee

Daniels has named Duncan Kendal, Chairman, Adjustment Committee as a defendant.  Duncan Kendal was the hearing officer who heard the disciplinary offense charged against Daniels for loan sharking/collecting or incurring debts from the inmates.  Duncan Kendal found Daniels guilty of that offense, and sanctioned him with the loss of 90 days Good Time

credit.   [R. 1-5, p. 8]   In the narrative statement of Daniels' claim, he states:   "I was then taken to the Adjustment Committee and Found Guilty by Officer Duncan Kendal, on April 1, 2015, and 90 GTL was issued and placed in Seg Unit, for a day."   [R. 1, p. 5].   Outside of Kendal's conduct as the hearing officer, Daniels does not state what actions Duncan Kendal took or identify any other conduct by Kendal that violated his constitutional rights.

Clearly, Duncan Kendal was not involved in the issuance of the subject disciplinary report against Daniels and charging him with the loan sharking/indebtedness offense. Duncan Kendal was simply the hearing officer who heard the evidence and made the decision that Daniels was guilty of the charged offense.  As the hearing officer/judge in this matter, the Court concludes that Duncan Kendal is immune from Daniels' claims because as the judicial officer who heard the charge, weighed the evidence, and made a decision on the evidence before him, Kendal is entitled to judicial immunity, similar to any judges in a state or federal prosecution acting in their judicial capacity.  "It is well established that judges are entitled to absolute judicial immunity from suits for money damages for all actions taken in the judge's judicial capacity,

9

unless these actions are taken in the complete absence of any jurisdiction." *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994) (*citing Mireles v. Waco*, 502 U.S. 9 (1991) (*per curiam*)). Daniels' claim against Duncan Kendal is premised upon actions he took when performing his role as judge/hearing officer, and thus falls squarely within the scope of this immunity. *Rose v. Leaver*, 25 F. App'x 191, 192 (6th Cir. 2002).

### 3. Johnny Bates, Sergeant

According to Daniels, on April 1, 2015, he went to the Security Office at BCC to report a conflict he was experiencing with a previous co-worker, an inmate named Reedy, who replaced him as an Inmate Grievance Aide, and with other inmates in his dorm who were disgruntled with Daniels for the manner in which he had performed or not performed his job when he was an Inmate Grievance Aide at BCC. Based on these conflicts, Daniels requested to be placed in Protective Custody. Daniels explained the situation to Sgt. Bates, telling him that certain inmates in his dorm were mad at him for not filing certain grievances that they thought he should have filed on their behalf and/or not filed appeals concerning a grievance disposition. During the course of this conversation, Daniels indicated to Bates that he owed a few inmates for not carrying out their grievance work.

10

[R. 1, p. 4].   However, Daniels states that he did not state
that he owed any money to these disgruntled inmates.[1]  *Id.*  Based
on this conversation, Sgt. Bates issued a disciplinary report
against Daniels, charging him with being indebted to other
inmates.   [R. 1-5, p. 5].   This report was reviewed by
Correctional Sgt. Daniel C. George, who charged Daniels with "5-
04 Loan sharking, collecting or incurring debts," *id.*, for which
he was convicted and sanctioned with 90 days of forfeited Good
Time.  [R. 1-5, p. 8].

Based on the written report of Daniels that he submitted to
Sgt. Bates, and then later withdrew, that he owned money to

---

[1]Daniels' statement in his complaint is refuted by the Report of
Investigating Officer Daniel C. George, who reviewed this matter
and reported:

> I read the above report of I/M Daniels #086174 and
> advised him of his rights.  I/M Daniels states that he
> didn't occur [sic] any debt and didn't want to add any
> further comment.  I asked if he wrote the statement
> attached?  He stated yes.  I asked why he said he owed
> money to other inmates?  He said he takes his report
> back.  I spoke with Sgt. Bates and he states the above
> report is true and accurate.

[R. 1-5, p. 5].

other inmates, the Court concludes that Sgt. Bates had a reasonable basis for issuing a disciplinary report against Daniels for incurring indebtedness to other inmates at BCC. The reviewing officer, Sgt. Daniel George, agreed with Sgt. Bates' assessment and charged Daniels with the "loan sharking" offense. Given the reasonable basis for Sgt. Bates' decision to issue a disciplinary report against Daniels, the Court concludes that he, as a state prison official, is entitled to qualified immunity from suit, the same qualified immunity to which federal officials are entitled in like circumstances.

In *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), the Supreme Court held that federal officials are entitled to qualified immunity from suit for violations of constitutional rights insofar as their conduct does not violate clearly established law. As long as there is a "legitimate question" about the constitutionality of particular conduct, "it cannot be said that . . . such conduct violates clearly established law." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The scope of the right complained of "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640

(1987). this standard ensures that government officials are on notice of the legality of their conduct before they are subjected to a lawsuit. *Saucier v. Katz*, 533 U.S. 194, 206 (2001).

The Sixth Circuit has analyzed claims of qualified immunity in three steps: first, the court determines whether a constitutional violation occurred; second, the court determines whether the right that was violated was a clearly established right of which a reasonable person would have known; and third, the court must decide whether the evidence offered by the plaintiff is sufficient to demonstrate that the official's conduct was objectively unreasonable in light of the clearly established right. *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999); *Shamaeizadeh v. Cunigan*, 338 F.3d 535 (6th Cir. 2003). *See also, Pearson v. Callahan*, 555 U.S. 223 (2009) (holding that procedure sequence set forth in *Saucier* was often appropriate, but not mandatory).

In the present case, as previously explained above, Sgt. Bates clearly had a reasonable basis for issuing a disciplinary report against Daniels. Therefore, Sgt. Bates is entitled to qualified immunity from suit, and Daniels has failed to establish a claim that Sgt. Bates violated his First Amendment

rights. *Saucier*, 533 U.S. at 201; *Pearson*, 555 U.S. 223. *See also Goudlock v. Hernandez*, No. 08-CV-204-BEN(RBB), 2009 WL 2982825 (S.D. Cal. Aug. 4, 2009).

## D.    Transfer to Northpoint Training Center

On or about April 1, 2015, Daniels was transferred from BCC to NTC.    Daniels claims that his transfer was done in retaliation for his exercising his First Amendment right to file grievances.

It is well settled that a prisoner has no entitlement protected by due process to a particular security classification or to be incarcerated in a particular facility, or any particular area of a prison. *See Moody v. Daggett*, 429 U.S. at 88 n. 9 (1976); *Meachum v. Fano*, 427 U.S. 215, 224, 96 S. Ct. 2532 (1976); *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S. Ct. 2543 (1976); Marchesani *v. McCune*, 531 F.2d 459 (10th Cir.), *cert*. *denied*, 429 U.S. 846 (1976) (inmates have neither protected liberty interests nor property interests in custodial classification).

In Kentucky, the transfer of prisoners is within the discretion of the KDOC.    Ky.Rev.Stat. § 197.065.    Irrespective of Daniels' claim that his transfer to NTC was retaliatory in nature, the law is clear that inmates have no constitutional

14

right to be incarcerated in any particular institution or a particular part of an institution unless the state has created a liberty interest in remaining at a particular institution. *Olim v. Wakinekona*, 461 U.S. 238, 245-48 (1983); *Montanye v. Haymes*, 427 U.S. 236, 242 (1976); *Meachum v. Fano*, 427 U.S. 215, 223-229 (1976); *Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir.1986).

Furthermore, the Sixth Circuit has repeatedly held that a prison transfer is generally not a sufficiently adverse action to deter a person of ordinary firmness from engaging in protected conduct. *Jewell v. Leroux*, 20 F. App'x 375 (6th Cir.2001) (A transfer to the general population of another prison is not considered sufficiently adverse.); *Geiger v. Prison Realty Trust, Inc.*, 13 F. App'x 313 (6th Cir.2001) (The prisoner failed to allege that his transfer to another institution prevented or deterred him from continuing to write grievances and file lawsuits.); *Friedman v. Corr. Corp. of Am.*, 11 F. App'x 467 (6th Cir.2001) (Transfer to another institution that was farther away from those who visited him and did not offer the programs in which he previously participated was not an "adverse action" for purposes of a

retaliation claim.); *Goddard v. Ky. Dep't of Corr.*, 2000 WL 191758 (6th Cir. Feb. 7, 2000) (The transfer of an inmate to the general population of another prison is not considered sufficiently adverse.).

Further, the courts are ever cautioned to stay out of the business of micro-managing prisons. *See Bell v. Wolfish*, 441 U.S. 520 (1979); *Turner v. Safley*, 482 U.S. 78 (1987); and *Turney v. Scroggy*, 831 F.2d 135 (6th Cir. 1987). The Supreme Court has explicitly rejected heightened judicial scrutiny of prison policies. Rigorous scrutiny, the Court noted, is simply "not appropriate for consideration of regulations that are centrally concerned with the maintenance of order and security within prisons." *Thornburgh v. Abbott*, 490 U.S. 401, 409-10, 109 S. Ct. 1874 (1989). "Subjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration." *Turner v. Safley*, 482 U.S. at 89. Prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to

16

preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. at 562.

**CONCLUSION**

Having conducted the initial screening required by 28 U.S.C. §§ 1915(e)(2)(B), 1915A, and all claims being resolved, this action is subject to dismissal for plaintiff's failure to state a claim for which relief can be granted.

Accordingly, it is **ORDERED** as follows:

1. Plaintiff John Larry Daniels' § 1983 claims for monetary damages against defendants, Steve Haney, Warden, and Duncan Kendal, Chairman, Adjustment Committee, in their official capacity are barred by the Eleventh Amendment and are **DISMISSED.**

2. Plaintiff's claims against defendants, Steve Haney, Warden; Duncan Kendal, Chairman, Adjustment Committee; and Sergeant Johnny Bates, in their individual capacities for monetary damages are **DISMISSED** for plaintiff's failure to establish a viable constitutional claim against them under § 1983.

3. All claims against all Defendants having been resolved, this action is **DISMISSED** and **STRICKEN** from the docket.

17

4.   Judgment will be entered contemporaneously with this Memorandum Opinion and Order in favor of the defendants.

This 28th day of October, 2015.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge

18